TOBACCO GROWERS CO-OPERATIVE ASSOCIATION v. S. S. BISSETT.

(Filed 20 February, 1924.)

**Contracts—Co-operative Marketing—Landlord and Tenant—Statutes—Liens—Possession—Trusts—Nonmember Tenant—Penalties.**

> The landlord and tenant act (C. S., 2355) gives the landlord only a preferred lien on his tenant's crop on his rented lands for the payment of the rent; and unless and until the landlord has acquired a part of his tenant's crop for the rent, he has acquired no tobacco from his tenant that comes within the provisions of his membership contract in the Tobacco Growers Coöperative Association, and is not liable for the penalty therein contained for failure to market the tobacco raised by his tenant.

APPEAL by plaintiff from *Connor, J.,* at chambers in Nashville, on 20 September, 1923, dissolving the restraining order.

*Burgess & Joyner and Austin & Davenport for plaintiff.*
*Aaron Sapiro, Elystus L. Hayes, Theodore E. Bowen, and L. L. Levy of counsel for plaintiff.*
*Connor & Hill for defendant.*

CLARK, C. J. This was an action by the plaintiff association, a nonprofit coöperative marketing association organized under chapter 7, Laws 1921. The defendant is a member of the association. By the

terms of the marketing agreement embodied in the association agreement, signed by the defendant, he agreed to sell and deliver to the association all of his tobacco during the term of his contract. The pertinent features of the contract so far as this appeal is concerned are as follows:

"2. The association agrees to buy and the grower agrees to sell and deliver to the association all of the tobacco produced by or for him or acquired by him as landlord or lessor, during the years 1921, 1922, 1923, 1924, 1925."

"3. The grower expressly warrants that he has not heretofore contracted to sell, market, or deliver any of his said tobacco to any person, firm or corporation, except as noted at the end of this agreement. Any tobacco covered by such existing contracts or crop mortgage shall be excluded from the terms hereof for the period and to the extent noted."

"11. The grower shall have the right to stop growing tobacco and to grow anything else at any time at his free discretion; but if he produce any tobacco, or acquires or owns any interest in any tobacco, as landlord or lessor, during the term hereof, it shall all be included under the terms of this agreement, and must be sold only to the association."

"12. Nothing in this agreement shall be interpreted as compelling the grower to deliver any specified quantity of tobacco each year; but he shall deliver all the tobacco produced by or for him."

"13. (a) This agreement shall be binding upon the grower as long as he produces tobacco directly or indirectly, or has the legal right to exercise control of any commercial tobacco or any interest therein as a producer or landlord during their term of this contract."

"18. (a) The grower hereby agrees to pay to the association for all tobacco delivered, consigned or marketed or withheld by or for him, other than in accordance with the terms hereof, the sum of five cents per pound as liquidated damages, averaged for all types and grades of tobacco for the breach of this contract."

The complaint alleges that the defendant had violated his agreement by selling all of his 1922 crop of tobacco to persons other than to plaintiff, and had announced that he would not deliver any of his tobacco of the 1923 crop to the association, and that the defendant had sold 1,500 pounds of his 1923 crop to persons other than the plaintiff, and prayed that he be required to perform the association agreement, and that he be restrained from delivering, selling or otherwise disposing of any tobacco produced by or for him or controlled by him during the life of the contract to any person or persons other than the plaintiff, and asked for an injunction *pendente lite*.

An order was issued by the trial judge that the defendant appear and show cause why a restraining order should not be issued to the

hearing, and a temporary restraining order was served upon the defendant from disposing of any of his tobacco pending the hearing of the order to show cause.

Upon the sworn statement of the defendant that he had sold no tobacco of the 1923 crop to persons other than plaintiff, and in view of his sworn statement that he intended to deliver all of his tobacco to it, the plaintiff consented to a dissolving of the restraining order theretofore issued, and did not seek a preliminary injunction. The court then granted an injunction to the defendant against the plaintiff, as prayed, that it be restrained from withholding from the defendant, and from any advancement to be made to the defendant, any sum of money on account of the sales by his tenants, who were not members of the association, of their share of the tobacco.

The Tobacco Growers Coöperative Association Act, chapter 87, Laws 1921, was construed and its validity sustained in *Coöperative Association v. Jones,* 185 N. C., 265. The only point which arises on this appeal is the construction of the clauses of the contract above set out, especially of clause 11, upon the following facts:

Philip Bissett, who was not a member of the association, rented lands from the defendant in 1923 and planted four acres in tobacco, as did also Carey Finch, who rented four acres from him, and William O'Neal, who rented three acres. All of the defendant's tenants above enumerated pay as rent one-half of the crops produced by them. It is admitted that of the tobacco produced by said Bissett, Finch and O'Neal, the one-half has been turned over to the defendant as rent, and has been or will be delivered by him to the plaintiff association, and all the tobacco produced by him upon lands which he cultivated in 1923 has been or will be delivered to the association.

It is also admitted that of the tobacco produced by the tenants, Philip Bissett, Finch and O'Neal, the one-half belonging to them will be by them marketed as they see fit, and as they are not members of the association, it is presumed that they sold their tobacco on what is known as the "open" or "auction" market; and it is admitted that as the above tenants of the defendant have prepared their tobacco for market the defendant had met with them and the tobacco was divided, the defendant taking his one-half and the above tenants taking their one-half.

The question presented on appeal is simply this, as is admitted by the plaintiff and the defendant: Can the plaintiff association, from the advancements which it has agreed to make to its various members, upon the delivery of tobacco to it, deduct five cents per pound as liquidated damages for each and every pound of tobacco produced upon the lands of the member by tenants who are not members of the association, and

who called for an actual division with the landlord, and who declined to have their part of the tobacco delivered to the plaintiff association?

The plaintiff's brief admits that it cannot compel the delivery by the landlord or by the nonmember tenant to it of the portion of the crop produced by the nonmember tenant, which is the property of the tenant and not of the landlord.

Under paragraph 2 of the contract the defendant agreed "to deliver to the association all of the tobacco produced by or for him or acquired by him as landlord or lessor." Paragraph 11 of the contract provides: "If he (the member) produce any tobacco or acquire or own any interest in tobacco as landlord or lessor during the term hereof, it shall be included under the terms of this agreement, and must be sold only to the association."

It would seem clear, therefore, that the only tobacco covered by this contract is tobacco of the member produced on lands either owned or rented by him. Neither the plaintiff nor the defendant agreed that the defendant would be compelled to either deliver tobacco belonging to a nonmember tenant nor to pay five cents a pound penalty for failure to do so.

It is significant that, though the act on its face has been carefully and skillfully drawn, it is nowhere stated in it that the landlord shall be compelled to deliver all tobacco produced upon his lands by nonmember tenants. Such provision was made in the Kentucky statute and is the basis upon which was decided the case in the Circuit Court of McCracken County of *Tobacco Growers Coöperative Association v. Feagain,* decided 19 January, 1924, and which is cited by plaintiff.

The landlord and tenant act, C. S., 2355, does not make the landlord of a cropper the owner nor give him title to the tenant's share of the crop. It merely provides that the landlord is "vested in possession of all the crops raised on the land until the rents for said land are paid"; and in the last sentence of that section it is said: "This lien shall be preferred to all other liens." The landlord therefore has a preferred lien on the crop and, so to speak, is a trustee in possession until the advances, if any, are paid, but he is not owner and has acquired no title to the tenant's share who can therefore, with the permission of the landlord, move or sell his share of the crop or can pay off the lien. The tenant's share of the tobacco in this case has not been "delivered, consigned to or marketed" by the landlord, and the landlord has not acquired and does not own any interest in the tenant's share, but merely has a right of possession until his lien has been paid off.

The plaintiff frankly admits in his brief that the tenant has a prior right to the association in his share of the crop, and can insist upon a division and sell the tobacco to any one he chooses, but he claims that

the defendant has breached his contract and is liable to the penalty of five cents per pound when he does not compel the tenant to deliver his half of the crop to the plaintiff.

It may well be, under section 11 of the contract, that if the landlord takes over any part of the tenant's share in the crop and applies it under his statutory lien for advances, he can be justly said to acquire or own such interest in the tobacco as lessor, and it will be included within the terms of the agreement, and if not sold by the landlord only to the association, he is liable to the penalty of five cents.

But that is not the state of facts here under which it is agreed that the tenant demanded and received his one-half share of the tobacco. It may be that the tenant owed no advances to the landlord or that he was able to pay them off in cash.

Therefore, as under the agreement it appears that the tenant received his half of the tobacco, the landlord has not, under the terms of section 11 of the contract, acquired nor owns any interest in the tenants' half, and he is not liable to the penalty of five cents per pound to the plaintiff for the nondelivery of the same to the plaintiff.

Judgment of the court below is
Affirmed.