## Richmond.

## Hatcher Layne v. Tobacco Growers Co-operative Association.

### May 27, 1926.

1. Marketing Associations—*Transfer of Business of Growing Tobacco by a Member to His Wife—Liability of Member to Association After Transfer—Case at Bar.*—In the instant case appellant entered into an agreement with appellee wherein he obligated himself to deliver to appellee for five years all the tobacco raised by him or his tenants or acquired by him as landlord or lessor. Appellant became dissatisfied with the manner in which he was being paid for his crops and published a notice in a newspaper that he had sold his farming utensils and other chattel property to his wife who would assume all bills and conduct the farm for the year 1924. Appellant owned no real estate but lived on a portion of his father's farm. His wife rented the farm, employed the labor, including the services of her husband whom she paid, and she personally supervised the farming operations. The tobacco grown on the land was sold on the open market, some by appellant and some by his wife.

   *Held:* That appellant did not produce the tobacco in question nor had he any lawful control over or interest in it either as producer or landlord, and an injunction would not lie to restrain him from selling the tobacco grown on the open market.

2. Husband and Wife—*Right of Wife to Engage in Business—Sale of Chattel Property by Husband to Wife.*—Where the contest is not between a husband and his wife and his creditors, but between a husband and a marketing association as to his obligations as a member of the association, there is nothing to prevent the husband from selling his chattel property to the wife, nor to prevent her from engaging in any lawful business that her circumstances might suggest as desirable.

3. Marketing Associations—*Right of Association—Only Rights Given by the Contract.*—A co-operative marketing association has no other rights than those given in its contract with members and can only demand delivery of products from a member where the contract specifically or by necessary implication authorized it to do so.

Appeal from a decree of the Circuit Court of Charlotte county. Decree for complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*Allen & Weaver,* for the appellant.

*J. Kent Early,* for the appellee.

McLEMORE, J., delivered the opinion of the court.

Hatcher Layne, a farmer of Charlotte county, in the year 1921, entered into an agreement with the appellee, wherein he obligated himself to deliver to the association for five years all of the tobacco raised by him or his tenants, or acquired by him as landlord or lessor. It was a regular form of contract employed by the Tobacco Growers Co-operative Association and is full and comprehensive.

The paragraphs with which we are concerned are 11, 12 and 13:

"You can stop growing tobacco if you wish.

"11. The grower shall have the right to stop growing tobacco and to grow anything else at any time at his free discretion; but if he produces any tobacco, or acquires or owns any interest in any tobacco, as landlord or lessor, during the term hereof, it shall be included under the terms of this agreement and must be sold only to the association.

"You do not have to deliver any particular amount.

"12. Nothing in this agreement shall be interpreted as compelling the grower to deliver any specified quantity of tobacco each year; but he shall deliver all the tobacco produced by or for him.

"You deliver all the tobacco you raise.

"13 (a). This agreement shall be binding upon the grower as long as he produces tobacco directly or indirectly, or has the legal right to exercise control of any commercial tobacco or any interest therein as a producer or landlord during the term of this contract.

"(b). If this agreement is signed by the members of a copartnership, it shall apply to them and each of them individually in the event of the dissolution or termination of the said copartnership.

"You may make a crop mortgage—the association will try to help you secure standard terms.

"(c). If the grower places a crop mortgage upon any of his crops during the term hereof, the association shall have the right to take delivery of his tobacco and to pay off all or part of the crop mortgage for the account of the grower and to charge the same against him individually.

"The grower shall notify the association prior to making any crop mortgage and the association will assist the grower in any such transaction as far as it deems proper."

[1] Under this contract Layne grew tobacco prior to 1924 and delivered same to the association, but soon became very much dissatisfied with the manner in which he was being paid for his crop, and decided to discontinue farming. He accordingly published a notice for four weeks in the Charlotte Gazette stating that he had sold his farming utensils and other chattel property to his wife, Marion Layne, who would assume all bills and conduct the farm for the year 1924.

Appellant owned no real estate, but lived upon a portion of his father's farm. For the year 1924 Mrs. Marion Layne rented the farm, employed the labor, including the services of her husband to whom she paid

$20.00 per month. The tobacco grown on this land was sold on the open market, some by Hatcher Layne and some by his wife, but before she had finished selling the 1924 crop, an injunction order was obtained against Hatcher Layne restraining him from selling the remaining tobacco grown on this farm, and this cause is before us to determine the propriety of the final order making permanent the injunction, and entering judgment for $100.00 attorney's fees, and $113.00 as liquidated damages against appellant.

Appellant assigns the following errors:

"First, to the action of the court in holding that the 1924 crop of tobacco in controversy 'was produced by the said defendant, and that he has the management and control of the same' within the meaning of said marketing contract; and,

"Secondly, to the action of the court in requiring and directing petitioner to deliver to complainant, 'all and every part of the tobacco' of the said 1924 crop, and also the crops to be grown in 1925 and 1926, and

"Thirdly, to the action of the court in decreeing in favor of complainant for liquidated damages and attorney's fees."

The only question to be determined by this court is whether or not Hatcher Layne produced the tobacco against which the injunction issued, or had any lawful control over or interest in the same either as producer or landlord, and as the several assignments of error are dependent upon a proper answer to this question, they may conveniently be considered together.

The clear weight of the evidence establishes, we think, the following facts: That Mrs. Layne rented the farm; that appellant publicly announced his retirement from any ownership or control of the farming operations by publication in the county paper and

otherwise; that Mrs. Layne employed and paid the labor to raise and harvest the crops; that she personally rented the land upon which the tobacco was grown and paid the rent therefor; that she personally supervised the farming operations, and in numerous instances performed manual labor along with the other employees engaged in the farming operations; that she also employed her husband at $20.00 per month to work on the said farm; that she assumed the indebtedness of her husband when he ostensibly went out of business, and turned over to her his chattel property, and that he transferred his property, and his wife took up the control and operation of the farm because the handling of his tobacco by the association had been thoroughly unsatisfactory, and his feeling that he could not support his family if compelled to deliver his crop to be handled under the conditions as set out in the marketing contract.

It seems, therefore, reasonably clear from the evidence that Mrs. Layne rented the land and controlled the cultivation of the crops, and the sale of the tobacco, and that her husband had no proprietary interest therein, from which it would follow that the contract between appellant and appellee, if strictly construed, has not been violated.

[2] That appellant had the right to stop growing tobacco if he so desired is conceded. He could continue to farm and grow other crops, or he could discontinue farming altogether; see section 11 of the contract. This not being a contest between a husband or wife and creditors, there is nothing to prevent the husband from selling his chattel property to the wife, nor to prevent her from engaging in any lawful business that her circumstances might suggest as desirable. Code of Virginia, section 5134.

Appellant was not landlord or lessor. The evidence is uncontradicted that Mrs. Layne rented the land, made the contract in the absence of her husband, and paid the rent. He owned no land and, therefore, was not the lessor. It seems equally clear that he was not the grower of the tobacco, for he had no land upon which to grow it, either as owner or tenant.

[3] Appellee had no other rights than were given in the contract, and could only demand delivery where the contract specifically or by necessary implication authorized it to do so.

Paragraph eleven of the contract was under consideration before the Supreme Court of North Carolina in the case of *Tobacco Growers Co-operative Association* v. *Bissett*, 187 N. C. 180, 121 S. E. 446, and the late distinguished Chief Justice, Walter Clark, speaking for the court, said:

"Under paragraph 2 of the contract the defendant agreed:

" 'To deliver to the association all of the tobacco produced by or for him or acquired by him as landlord or lessor.'

"Paragraph 11 of the contract provides:

" 'If he (the member) procure any tobacco or acquire or own any interest in tobacco as landlord or lessor during the term hereof it shall be included under the terms of this agreement, and must be sold only to this association.'

"It would seem clear, therefore, that the only tobacco covered by this contract is tobacco of the member produced by lands either owned or rented by him. Neither the plaintiff not the defendant agreed that the defendant would be compelled to either deliver tobacco belonging to a nonmember tenant, nor to pay five cents a pound penalty for failure to do so."

The decree appealed from proceeded upon the theory that the tobacco in controversy was produced by the appellant and that he owned the same. This may be true, but we think the evidence insufficient to support that contention and that the injunction should have been denied and the bill dismissed, and a decree to that effect will be entered in this court.

*Reversed.*